Michael FICKLIN *v.* STATE of Arkansas

CA CR 08-593                                            289 S.W.3d 481

Court of Appeals of Arkansas
Opinion delivered December 10, 2008

134

*Butler & Green, P.A.*, by: *Chad M. Green*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Laura Shue*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. Appellant Michael Ficklin challenges the sufficiency of the evidence of his Pulaski County jury conviction of Class Y felony possession of methamphetamine with intent to deliver and Class B felony possession of ecstasy with intent to deliver, specifically claiming that the State did not prove that there was a usable amount of the controlled substances. We find no merit to appellant's argument and affirm.

Testimony at trial focused upon the execution of a search warrant at a home on #2 Bliss Circle. Little Rock Police Department detectives testified regarding the details of their respective roles and the inclusion of the SWAT team in this effort. Detective Vincent Lucio testified that he was the officer who applied for the search warrant and the officer in charge of the property being seized from the residence. Surveillance cameras were monitoring the outside of the home. He explained that to provide a tactical advantage for the team in the execution of the warrant, the warrant was executed at night. Sergeant Robert Mourot testified that he saw appellant coming out the front door then running back inside as the team approached the house. He described the area in which appellant was detained and restrained

within the house as an open living space with the kitchen, dining, and living areas as extending into one another.

Detective Lawrence Welborn testified that he found mail and other documents containing both appellant's name and the home's address on the kitchen counter, a loaded .38 caliber revolver on the dining table, and two operating television monitors in the living area on the fireplace that were connected to the outside cameras. He explained that in his experience and training, drug dealers use guns to protect the drugs and use surveillance equipment to see people, particularly law enforcement, coming to the door. Lieutenant David Hudson testified that he found a SAIGA .223-caliber rifle with a magazine containing seventeen live rounds on the living room couch near appellant. Detective Ryan Hudson found appellant's social-security card on the fireplace mantel in the living area and a police scanner in a dining-area cabinet.

Detective Willie Thomas described how he found pills in a plastic bag, labeled exhibit thirteen (13), in appellant's pants pocket, and Detective Carrie Mauldin, who searched appellant simultaneously with Detective Thomas, told how she discovered $737 in one of appellant's pockets. Reagan West, an Arkansas State Crime Laboratory forensic chemist, testified that State's exhibit thirteen (13) consisted of twenty-one tablets containing methamphetamine, ecstasy, caffeine and procaine. She explained that she commonly sees mixtures in pills and that "you never know what's going to be in [th]em. They have all kinds of different things that can be in there." West further explained that she did not measure the amounts of each particular substance in the tablets because it was not standard procedure to quantitate the exact measurements of the substances in pills.

Detective Michael Terry explained his participation in the search and that he found green pills in a plastic bag, labeled State's exhibit fourteen (14), next to a bag of ammunition shell casings, on top of a china cabinet in the dining area. He also found 634 tablets of various colors, labeled State's exhibit sixteen (16), in a cigar box on the dining table, which was located five feet from the living room couch. Detective Tim Stankevitz testified that he found two bullet-proof vests and a hand-held scale in the east bedroom.

The jury was instructed that it could consider the amount of the controlled substances with all the other facts and circumstances in determining the intent for which they were possessed. Appel-

lant's counsel moved for a directed verdict on the count of possession of methamphetamine with intent to deliver, specifically stating that the chemist did not quantify the amount of methamphetamine in each tablet. After the trial court denied that motion, counsel moved for a directed verdict on the count of possession of ecstasy with intent to deliver, stating that "I would again argue the jury is left to conjecture" regarding appellant's intent. While the State argues that appellant failed to preserve the challenge on appeal as to the ecstasy conviction, the motion in respect to the ecstasy count referenced counsel's earlier argument in which he asserted that the failure to quantitate the amount of the controlled substance resulted in a failure of proof of possession.

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Kelley v. State*, 103 Ark. App. 110, 286 S.W.3d 746 (2008). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. We defer to the jury's determination on the matter of witness credibility. *Id.* Jurors do not and need not view each fact in isolation, but rather may consider the evidence as a whole. *Id.* The jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence. *Id.*

Our disposition of this case makes it unnecessary to determine whether counsel's reference to his preceding argument asserting the insufficiency of the evidence regarding the methamphetamine count was sufficient to apprise the trial court of the insufficiency in the State's proof regarding the ecstasy count. Both methamphetamine and ecstasy were present in the tablets found upon appellant. The fact that the drugs were present in the consumable form of a pill distinguishes this case from the line of cases where trace amounts of a controlled substance were presented as evidence of possession.

Appellant argues that the State cannot establish possession with intent to deliver a controlled substance if it does not first prove that the accused possessed a usable amount of the controlled substance. His argument focuses on that fact that the State failed to elicit testimony regarding the weight of the methamphetamine or ecstasy contained in the individual pills found in appellant's

possession. He reasons that the failure to elicit testimony regarding the weight results in a failure to establish a usable amount. The State responds that the "usable" amount requirement is inapplicable to delivery cases. *See Gregory v. State*, 37 Ark. App. 135, 825 S.W.2d 269 (1992). Neither argument directly addresses the circumstances of this case. Appellant's emphasis on the weight of the contraband ignores the concept of a contraband being in a usable form. The State's premise is correct as to the usable amount requirement being inapplicable to delivery cases; however, appellant was convicted of possession with intent to deliver the controlled substances, not actual delivery of the controlled substances.

Appellant focuses upon the weight of the contraband and relies upon the case of *Harbison v. State*, 302 Ark. 315, 322, 790 S.W.2d 146, 151 (1990), where the accused possessed a bottle containing a trace amount of dust residue. In *Harbison*, our supreme court held that possession of a controlled substance must be of a measurable or usable amount to constitute a violation of Arkansas Code Annotated § 5-64-401 (Repl. 2006). The court reasoned that legislation criminalizing the possession of controlled substances was aimed at preventing use and trafficking of prohibited substances, and then concluded that the possession of a trace or less than usable amount does not contribute to either of those purposes.

In the wake of *Harbison*, the limits of the concept of a usable amount have evolved with a fair degree of deference to the expertise of chemists and police officers familiar with drug use. In *Buckley v. State*, 36 Ark. App. 7, 816 S.W.2d 894 (1991), this court held that a chemist's testimony that small chips of crack cocaine were sometimes loaded into a pipe was sufficient evidence for a fact-finder to infer that pieces of that size constituted a usable amount. In *Sinks v. State*, 44 Ark. App. 1, 864 S.W.2d 879 (1993), we held that 0.024 grams of cocaine was usable because the cocaine was (1) capable of quantitative analysis, (2) could be seen with the naked eye, and (3) was tangible and could be picked up. Then, in *Williams v. State*, 47 Ark. App. 143, 887 S.W.2d 312 (1994), we held that a marijuana cigarette dipped in PCP contained a sufficient amount of PCP to be usable where a police detective and a chemist both testified that smoking was the most common method of PCP use. Significantly, in *Williams*, this court noted that the evidence was substantial even without proof as to the weight of the PCP.

■ Following this line of cases, proof of a detectable amount of a controlled substance in a consumable form, such as a pill, is sufficient evidence for a fact-finder to infer that the accused possessed a usable amount of the controlled substance. In the case before us, the methamphetamine and ecstasy were contained in tablet form. The fact that each controlled substance was present in a pill form demonstrates its ability to be consumed and satisfies the usable amount requirement.

■ Here, the testimony established that appellant possessed twenty-one pills on his person which contained the controlled substances methamphetamine and ecstasy. Large amounts of methamphetamine and ecstasy tablets were found in the dining area inside the home. Surveillance equipment, scales, loaded guns, ammunition, and bullet-proof vests were found in plain view in appellant's home and a large amount of cash was found on appellant. Under these circumstances, the jury was entitled to draw the inference that appellant possessed the tablets containing the controlled substances with the intent to deliver those controlled substances.

Accordingly, we find no error and affirm.

BIRD and MARSHALL, JJ., agree.