Cite as 2020 Ark. App. 305

# ARKANSAS COURT OF APPEALS

DIVISIONS I, II & IV
No. CR-19-824

|  |  |  |
|---|---|---|
| TARA KOLB | | **Opinion Delivered** May 13, 2020 |
| | APPELLANT | APPEAL FROM THE DREW COUNTY CIRCUIT COURT [NO. 22CR-19-8] |
| V. | | |
| | | HONORABLE ROBERT BYNUM GIBSON, JR., JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | REVERSED |

## LARRY D. VAUGHT, Judge

Tara Kolb appeals her conviction by a Drew County Circuit Court jury of possessing less than two grams of methamphetamine. We reverse Kolb's conviction because the State failed to prove that she possessed a "usable amount" of the drug as required by *Harbison v. State*, 302 Ark. 315, 790 S.W.2d 146 (1990).

On December 31, 2018, James Slaughter, a police officer with the Monticello Police Department, stopped a vehicle in which Kolb and Dewayne Flemister were the only occupants. Officer Slaughter searched the vehicle and discovered four syringes. Kolb waived her *Miranda* rights and told Officer Slaughter that the syringe found in her notebook would "test positive." She also told the officer that if he found drugs in the vehicle, they were hers. Officer Slaughter sent all four syringes to the Arkansas State Crime Laboratory.

Only two witnesses testified for the State: Officer Slaughter and a chemist from the Arkansas State Crime Laboratory. The chemist, David Arellano, testified that only one of the

syringes was both weighed and tested for the presence of methamphetamine. That syringe contained an unspecified amount of methamphetamine and had a gross weight of 3.61 grams including the syringe. The chemist testified that the syringe contained methamphetamine in a dark red liquid that looked like blood. He stated that the syringe had not been tested for blood or any other substance besides methamphetamine.

Kolb's attorney moved for a directed verdict arguing that the State had failed to prove that she possessed a "usable amount" of methamphetamine. The court denied the motion, and the jury convicted Kolb of possessing methamphetamine and drug paraphernalia. On appeal, Kolb challenges only the sufficiency of the evidence supporting her conviction for possession of less than two grams of methamphetamine.

On appellate review of the sufficiency of the evidence, the court seeks to determine whether the verdict is supported by substantial evidence. *Ashe v. State*, 57 Ark. App. 99, 942 S.W.2d 267 (1997). In *Jones v. State*, 269 Ark. 119, 598 S.W.2d 748 (1980), the court held that substantial evidence, whether direct or circumstantial, must be of "sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other." *Id.* at 120, 598 S.W.2d at 749 (citing *Pickens-Bond Constr. Co. v. Case*, 266 Ark. 323, 330, 584 S.W.2d 21, 25 (1979)). On appeal, the evidence is viewed in the light most favorable to the jury's verdict, and only the evidence supporting the verdict will be considered. *Szczerba v. State*, 2017 Ark. App. 27, at 4, 511 S.W.3d 360, 364.

Kolb argues that the court erred in denying her motion for directed verdict because the State failed to prove that she possessed a "usable amount" of methamphetamine. In *Harbison* and later cases, Arkansas courts have interpreted our possession statutes as requiring proof

2

that the defendant possessed either a measurable or usable amount of the controlled substance. *Harbison*, 302 Ark. at 322–23, 790 S.W.2d at 151 ("[P]ossession of less than a useable amount of a controlled substance is not what legislators have in mind when they criminalize possession because it cannot contribute to future conduct at which the legislation is aimed, that is, use of or trafficking in drugs."). Here, Kolb waived any argument about not possessing a measurable amount of methamphetamine because she failed to mention measurability in her motion for directed verdict. Instead, she argued at trial and now argues on appeal that the State failed to demonstrate that she possessed a usable amount of the drug.

Possession of a "usable amount" is sometimes established by evidence that the contraband was visible, tangible, and could be picked up. *See, e.g.*, *Robinson v. State*, 2015 Ark. App. 412. Such evidence was not presented in this case; we have no indication that the methamphetamine was visible, tangible, or could be picked up apart from the syringe full of unidentified red liquid. Therefore, whether Kolb possessed a usable amount hinges on whether the meth was in a form commonly used to administer the drug.

In *Ficklin v. State*, 104 Ark. App. 133, 138, 289 S.W.3d 481, 484 (2008), we held that "proof of a detectable amount of a controlled substance in a consumable form, such as a pill, is sufficient evidence for a fact-finder to infer that the accused possessed a usable amount of the controlled substance." In *Ficklin*, an Arkansas State Crime Laboratory forensic chemist testified that the State's exhibit consisted of twenty-one tablets containing methamphetamine, ecstasy, caffeine, and procaine. She explained that she commonly sees mixtures in pills and that "you never know what's going to be in [th]em. They have all kinds of different things that can be in there." *Id.* The *Ficklin* court went on to explain that

3

> [i]n the wake of *Harbison*, the limits of the concept of a usable amount have evolved with a fair degree of deference to the expertise of chemists and police officers familiar with drug use. In *Buckley v. State*, 36 Ark. App. 7, 816 S.W.2d 894 (1991), this court held that a chemist's testimony that small chips of crack cocaine were sometimes loaded into a pipe was sufficient evidence for a fact-finder to infer that pieces of that size constituted a usable amount. In *Sinks v. State*, 44 Ark. App. 1, 864 S.W.2d 879 (1993), we held that 0.024 grams of cocaine was usable because the cocaine was: (1) capable of quantitative analysis, (2) could be seen with the naked eye, and (3) was tangible and could be picked up. Then, in *Williams v. State*, 47 Ark. App. 143, 887 S.W.2d 312 (1994), we held that a marijuana cigarette dipped in PCP contained a sufficient amount of PCP to be usable where a police detective and a chemist both testified that smoking was the most common method of PCP use. Significantly, in *Williams*, this court noted that the evidence was substantial even without proof as to the weight of the PCP.

*Id.*

In the present case, we decline to affirm based on *Ficklin*. We acknowledge that the methamphetamine was found "loaded" into syringes, but here we have no evidence identifying the dark-red liquid in which the methamphetamine was found and therefore no way to know if the syringes were "usable." Without any evidence showing that the red liquid was an adulterant or diluent, the State failed to carry its burden of proving that Kolb possessed a usable amount. Kolb was convicted pursuant to Arkansas Code Annotated section 5-64-419(b)(1)(A) (Repl. 2016), which criminalizes possession of methamphetamine "with an aggregate weight, including adulterant or diluent, of less than two grams (2g)." An adulterant is defined by *Black's Law Dictionary* as an "inexpensive material used to dilute and increase the bulk or quantity of a controlled substance, regardless of its effect on the substance's chemical nature." *Black's Law Dictionary* (11th ed. 2019). As it stands, we only have evidence that the liquid looked like blood and no evidence establishing that blood is a material commonly used to dilute and increase the bulk or quantity of a controlled substance. Therefore, despite its

4

location in a syringe, we cannot say that the methamphetamine was, in fact, ready to use in an injectable form. We reverse Kolb's conviction.

Reversed.

GLADWIN, HARRISON, WHITEAKER, and MURPHY, JJ., agree.

GRUBER, C.J., and KLAPPENBACH, SWITZER, and BROWN, JJ., dissent.

**N. MARK KLAPPENBACH, Judge, dissenting**. I dissent. I would affirm Kolb's conviction for possession of methamphetamine because there was substantial evidence that she possessed a usable amount of methamphetamine.

In *Harbison v. State*, 302 Ark. 315, 322, 790 S.W.2d 146, 151 (1990), the supreme court adopted the usable-amount criteria, which it defined in part as an amount "sufficient to be useable in the manner in which such a substance is ordinarily used." In *Ficklin v. State*, 104 Ark. App. 133, 138, 289 S.W.3d 481, 484 (2008), we held that "proof of a detectable amount of a controlled substance in a consumable form, such as a pill, is sufficient evidence for a fact-finder to infer that the accused possessed a usable amount of the controlled substance." *Ficklin* involved tablets containing methamphetamine, ecstasy, and other substances. Although the amount of each substance was not measured, "the fact that each controlled substance was present in a pill form demonstrates its ability to be consumed and satisfies the usable amount requirement." *Id.*, 289 S.W.3d at 484.

In *Williams v. State*, 47 Ark. App. 143, 887 S.W.2d 312 (1994), there was no evidence as to the weight of the PCP detected on a marijuana cigarette, but there was testimony that PCP was commonly used by placing it on a cigarette and smoking it. Here, Officer Slaughter testified that syringes such as the ones he found were "commonly on the streets used for

5

ingesting meth." He said that two of the syringes were "loaded," which meant "filled with drugs." The chemist tested one of the syringes filled with a liquid and found it to contain methamphetamine. Accordingly, as in *Ficklin*, there was "proof of a detectable amount of a controlled substance in a consumable form." *Ficklin*, 101 Ark. App. at 138, 289 S.W.3d at 484.

The majority bases its decision on the fact that the liquid looked like blood and was not identified as an adulterant or diluent. However, there is no requirement that the liquid be identified as an adulterant or diluent. Although the weight of an adulterant or diluent may be included in determining the classification of the offense,[1] the presence and weight of such a substance here is immaterial because Kolb was charged with possessing "less than two grams" of methamphetamine. The liquid in the syringe tested positive for methamphetamine. Whether that liquid was highly concentrated methamphetamine or methamphetamine significantly diluted by other substances is irrelevant. By requiring that a commonly used adulterant or diluent be identified, the majority is requiring the State to prove a new element of the offense that does not exist either in the statute or in caselaw.

Kolb was found in possession of syringes commonly used to ingest methamphetamine. Two of the syringes were tested. One was found to contain methamphetamine residue, and

---

[1]Ark. Code Ann. § 5-64-419(b)(1) provides in part that a person who possesses a Schedule I or Schedule II controlled substance that is methamphetamine or cocaine with an aggregate weight, including an adulterant or diluent, of:

(A) Less than two grams (2g) upon conviction is guilty of a Class D felony;

(B) Two grams (2g) or more but less than ten grams (10g) upon conviction is guilty of a Class C felony; or

(C) Ten grams (10g) or more but less than two hundred grams (200g) upon conviction is guilty of a Class B felony.

the other was "loaded" with a liquid that tested positive for methamphetamine.  I would hold that the fact that methamphetamine was present in liquid form demonstrates its ability to be injected via the syringe and satisfies the usable-amount requirement.  *See Ficklin*, *supra*.

GRUBER, C.J., and SWITZER and BROWN, JJ., join.

*Devon Holder*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.