Stephen Brent KELLEY *v.* STATE of Arkansas

CA CR 07-633                                    286 S.W.3d 746

Court of Appeals of Arkansas
Opinion delivered September 3, 2008

*Darrell E. Davis, Jr.*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Nicana C. Sherman*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. A jury in Washington County Circuit Court convicted appellant Stephen Brent Kelley of two counts of computer child pornography and one count of internet stalking of a child. He was sentenced to sixty months' imprisonment and a fine of $1500 for each of the pornography convictions and sentenced to eighty-four months' imprisonment for the stalking conviction. His sentences were to run consecutively. In addition, the jury recommended that appellant receive counseling while incarcerated. Appellant has three arguments on appeal. First, appellant argues that the trial court erred in denying his motion for a directed verdict where the State lacked sufficient evidence of appellant's mental state to prove beyond a reasonable doubt that appellant believed the victim's age was that of a thirteen-year-old girl. Second,

appellant argues that the trial court erred in denying his motion to declare the Arkansas computer pornography statute unconstitutional under the United States and Arkansas Constitutions and to dismiss charges against appellant pursuant to that statute. Third, appellant argues that the trial court erred in denying his motion for a mistrial during the sentencing phase of his trial after the State commented to the jury regarding appellant's decision not to testify at both the guilt phase and the sentencing phase of his trial. We affirm on all points.

Between August 10, 2006, and October 4, 2006, appellant engaged in online chats with a person identified on Yahoo internet service as "Kelly Mason," who used the screen name "Lil Kelli K." Unbeknownst to appellant, "Kelly Mason" or "Lil Kelli K" was actually Detective Cory Roberts of the Fayetteville Police Department, Special Investigations Unit. Appellant and "Kelly" engaged in numerous online chats. During the first online chat, "Kelly" told appellant she was thirteen years old. Appellant responded that he was twenty-three years of age and noted the ten-year age gap between them. During the remaining two months of online chats, appellant discussed with "Kelly" subjects such as her age, her mother, and her sister, and told her that he would get into trouble if they were caught. He also questioned her about whether she had begun "bleeding" yet and whether she was a virgin. He warned her not to tell anyone about their chats. After the first chat, "Kelly" emailed appellant a picture. The picture was blurry in order to protect the woman in the photo, who at the time was sixteen or seventeen years of age. Closer to the end of the online chats, "Kelly" sent appellant another photo of the same woman when the woman was twenty-six years of age, but that photo had been age-regressed by staff at the National Center for Missing or Exploited Children to depict how she might have looked at age thirteen or fourteen.

The online chats between appellant and "Kelly" continued for almost two months. During the online chats, appellant initiated discussion about meeting "Kelly." After many online chats, a date and a meeting place were arranged. "Kelly" gave appellant directions to the White Oak Station on Gregg Street in Fayetteville, and appellant gave "Kelly" a description of the car he would be driving when he met her. As planned, on October 5, 2006, appellant arrived at White Oak Station to meet "Kelly." When appellant arrived at the location, he was met by Detective Roberts, who placed him under arrest.

After a trial on the charges filed against appellant, the jury found him guilty of two counts of computer child pornography and one count of internet stalking of a child. This appeal followed.

### I. Motion for Directed Verdict

Appellant's first argument on appeal is that the trial court erred in denying his motion for a directed verdict where the State lacked sufficient evidence of appellant's mental state to prove beyond a reasonable doubt that appellant believed the victim's age was that of a thirteen-year-old girl.

The standard of review in cases challenging the sufficiency of the evidence is well established. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Fairchild v. State*, 349 Ark. 147, 76 S.W.3d 884 (2002); *Branscum v. State*, 345 Ark. 21, 43 S.W.3d 148 (2001). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* At 666, 74 S.W.3d at 594. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001). We defer to the jury's determination on the matter of witness credibility. *Johnson v. State*, 71 Ark. App. 58, 25 S.W.3d 445 (2000). Jurors do not and need not view each fact in isolation, but rather may consider the evidence as a whole. *Chrobak v. State*, 75 Ark. App. 281, 58 S.W.3d 387 (2001). The jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence. *Id.* at 288, 58 S.W.3d at 391.

■■ Pursuant to Arkansas Code Annotated section 5-27-603(a)(2) (Repl. 2006), "A person commits computer child pornography if the person knowingly . . . [u]tilizes a computer online service, internet service, or local bulletin board service to seduce, solicit, lure, or entice or attempt to seduce, solicit, lure, or entice a child or another individual believed by the person to be a child, to engage in sexually explicit conduct." In addition, pursuant to Arkansas Code Annotated section 5-27-306(a), a person commits the offense of internet stalking of a child if the person, being

twenty-one or older, "knowingly uses a computer online service, internet service, or local internet bulletin board service to. . . [s]educe, solicit, lure, or entice an individual that the person believes to be fifteen (15) years of age or younger in an effort to arrange a meeting with the individual for the purpose of engaging in . . . [s]exual intercourse; [s]exually explicit conduct; or [d]eviate sexual activity as defined in § 5-14-101." Deviate sexual activity is defined in Arkansas Code Annotated section 5-14-101(1)(A) and (B) (Repl. 2006) as, "the penetration, however slight, of the anus or mouth of a person by the penis of another person; or the penetration, however slight, of the labia majora or anus of a person by any body member or foreign instrument manipulated by another person."

Appellant asserts that the evidence was insufficient in two respects. First, he argues that the State failed to establish beyond a reasonable doubt that appellant believed the victim was only thirteen years old. We disagree. In the first chat between appellant and "Kelly," "Kelly" told appellant that she was only thirteen years old. Moreover, appellant noted his age of twenty-three and remarked about the ten-year age gap between them. During the first chat, appellant made several references to "Kelly's" youth and the fact that he would be in "trouble" if she told anyone about their chats. During the months of online chats, appellant continued to make comments about getting into "trouble" if "Kelly" told anyone about their chats and inquired as to whether or not she was a virgin. Also during the chats, appellant made reference to "Kelly's" mom, her sister, her youth, her inexperience, and the fact that she might bleed because "Kelly" had not had sexual intercourse before. At no time during the online chats did it appear that appellant was confused about "Kelly's" age, nor did he indicate that he thought she was anything other than thirteen years of age. Also, the first photo emailed to appellant was of a young woman who was sixteen or seventeen years of age. The image of the woman in the photo was very blurry in order to protect the identity of the woman in the photo. A second photo emailed to appellant was of the same woman at age twenty-six; however, the photo had been age-regressed by the National Center for Missing or Exploited Children to depict how the woman would have looked at age thirteen or fourteen. An overview of the communication between appellant and "Kelly" reveals that appellant was clearly aware of "Kelly's" age. Under such facts, the jury did not

have to resort to speculation and conjecture to conclude from the evidence that appellant believed that "Kelly" was thirteen years old.

Second, appellant asserts that the evidence was insufficient that he knowingly arranged a meeting with "Kelly." Appellant contends that it was "Kelly" who made the arrangements to meet. However, Detective Roberts's testimony showed that during the first conversation, appellant told "Kelly" that he wanted to meet with her and also again acknowledged that if they were caught, he could get into trouble. Also during this first chat, appellant initiated conversation about "Kelly" "sneaking out" to meet him in person, and throughout the conversation, appellant made several references to meeting "Kelly." Detective Roberts testified that during the second chat, he suggested that appellant and "Kelly" meet at the park; however, Detective Roberts testified that he suggested the park only *after* appellant initiated the discussion of meeting. During the third chat, appellant and "Kelly" again discussed meeting at the park. It was at this point that appellant also began discussing sexually explicit acts, such as instructing "Kelly" about how to masturbate and repeatedly asking her if she had tried masturbation. Over the course of the chats, appellant continued to make plans regarding the details of the meeting. During a subsequent chat, appellant told "Kelly" to wear a skirt to the meeting. Appellant also described the truck he would be driving when he met her. "Kelly" asked appellant to bring ice cream and later asked appellant to bring alcohol. During subsequent chats, appellant initiated discussion of oral sex and intercourse between himself and "Kelly." Under these circumstances, the jury could reasonably infer that appellant knew the age of his victim and that he knowingly arranged a meeting with "Kelly." We affirm on this point.

## II. *Constitutionality of the Arkansas Computer Pornography Statute*

In appellant's second point on appeal, he argues that the trial court erred in denying his motion to declare the Arkansas computer pornography statute unconstitutional under the United States and Arkansas Constitutions and to dismiss charges against appellant pursuant to that statute. Appellant asserts that Arkansas Code Annotated section 5-27-603 is overbroad and unconstitutional on its face and as applied to appellant and that it criminalized a substantial amount of lawful speech with no compelling State interest in doing so. We have recently articulated our standard for reviewing the constitutionality of statutes:

Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. If it is possible to construe a statute as constitutional, we must do so. Because statutes are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable. We have said that a law is unconstitutionally vague under due process standards if it does not give a person of ordinary intelligence fair notice of what is prohibited, and it is so vague and standardless that it allows for arbitrary and discriminatory enforcement. As a general rule, the constitutionality of a statutory provision being attacked as void for vagueness is determined by the statute's applicability to the facts at issue. When challenging the constitutionality of a statute on grounds of vagueness, the individual challenging the statute must be one of the "entrapped innocent," who has not received fair warning; if, by his action, that individual clearly falls within the conduct proscribed by the statute, he cannot be heard to complain.

*Osborne v. State*, 94 Ark. App. 337, 230 S.W.3d 290 (2006) (citations omitted).

At trial, appellant sought to have the computer child pornography statute declared unconstitutional. The circuit court found that the statute did not restrict lawful speech, but rather addressed the solicitation of minors. Specifically, the trial court ruled as follows:

I think clearly the statute at issue there is distinguishable from the statute at issue in this particular case, the Kelley case, in that the statute at issue in our case here today does not in my judgment at least restrict lawful speech and this statute at issue addresses solicitation of minors. I think there's a clear distinction there so for that reason I'm going to deny that motion.

In support of his argument, appellant asserts that this case is similar to the Supreme Court's decision in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002), and requires dismissal of his conviction. In *Ashcroft*, the Supreme Court held that two sections of the federal Child Pornography Prevention Act of 1996, codified at 18 U.S.C. § 2256(8)(B) and (D), were unconstitutional as overbroad and restrictive of free speech. The two code sections at issue in *Ashcroft* extended the federal prohibition against child pornography to sexually explicit

images that appear to depict minors ("virtual children") but were produced without using any real children. In *Ashcroft*, the Supreme Court held:

> To preserve these freedoms, and to protect speech for its own sake, the Court's First Amendment cases draw vital distinctions between words and deeds, between ideas and conduct. See *Kingsley Int'l Pictures Corp.*, 360 U.S., at 689; *see also Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001) ("The normal method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it"). The government may not prohibit speech because it increases the chance an unlawful act will be committed "at some indefinite future time." *Hess v. Indiana*, 414 U.S. 105, 108 (1973) *(per curiam)*. The government may suppress speech for advocating the use of force or a violation of law only if "such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969) *(per curiam)*. There is here no attempt, incitement, solicitation, or conspiracy. The Government has shown no more than a remote connection between speech that might encourage thoughts or impulses and any resulting child abuse. Without a significantly stronger, more direct connection, the Government may not prohibit speech on the ground that it may encourage pedophiles to engage in illegal conduct.

*Ashcroft*, 535 U.S. at 253-54. However, *Ashcroft* is distinguishable from the case at hand because the images at issue in the *Ashcroft* case involved ideas rather than conduct. Specifically, the images in *Ashcroft* did not involve the "attempt, incitement, solicitation, or conspiracy" to engage a child in sexually explicit conduct. *Id.* at 253.

Here, it is appellant's action that sets this case apart from *Ashcroft*, his using an online service to arrange a meeting between appellant and "Kelly," soliciting "Kelly" to engage in sexually explicit conduct at the meeting, and to arrive to meet "Kelly" at the specific time and meeting place agreed upon during the online conversations. Unlike *Ashcroft*, the case at hand does not involve ideas, but actions; thus, *Ashcroft* is inapplicable to these facts.

Appellant also attempts to assert that this case lacks an important element: a victim. However, appellant still intended to solicit, lure, or entice a person he believed to be thirteen years of age. *See Kirwan v. State*, 351 Ark. 603, 96 S.W.3d 724 (2003) (holding that the fact that Andrea was merely a fictional character

created by the North Little Rock Police Department has no relevance in this challenge to the sufficiency of the evidence; if there is substantial evidence that Mr. Kirwan intended to rape an eleven-year-old girl and took a substantial step toward the commission of that crime, the verdict would be affirmed even though the attendant circumstances were not as he believed them to be). Therefore, to the extent appellant argues that there was no harm done in this case because "Kelly" was actually a police detective, and not an actual thirteen-year-old girl, his argument has no merit. We find that the trial court did not err in denying appellant's motion to declare the Arkansas computer pornography statute unconstitutional and affirm on this point.

### III. Motion for a Mistrial

Appellant's third point on appeal is that the trial court erred in denying his motion for a mistrial during the sentencing phase of his trial after the State commented to the jury regarding appellant's decision not to testify at both the guilt phase and the sentencing phase of his trial. We do not address the merits of this argument because appellant failed to make a contemporaneous objection below.

In *Smith v. State*, 330 Ark. 50, 53-54, 953 S.W.2d 870, 871-72 (1997), our supreme court held:

> In order to be timely, an objection must be contemporaneous, or nearly so, with the alleged error. *Jones v. State*, 326 Ark. 61, 931 S.W.2d 83 (1996). To preserve a point for appeal, a proper objection must be asserted at the first opportunity after the matter to which objection has been made occurs. *Asher v. State*, 303 Ark. 202, 795 S.W.2d 350 (1990), *cert. denied*, 498 U.S. 1048 (1991). Where the allegation of error concerns a statement made by the prosecutor during argument, the defendant must make an immediate objection to the statement at issue in order to preserve the allegation for appeal. *Wallace v. State*, 53 Ark. App. 199, 920 S.W.2d 864 (1996) (citing *Butler Mfg. Co. v. Hughes*, 292 Ark. 198, 729 S.W.2d 142 (1987)). In *Butler*, this court specifically rejected the Eighth Circuit Court of Appeals' holding in *Lange v. Schultz*, 627 F.2d 122 (8th Cir. 1980), that counsel may reserve his or her objection to statements made in closing argument until the end of the argument, before the case is submitted to the jury. This court held:

> We decline to follow the Eighth Circuit's position and instead require a timely objection, made at the time the alleged error occurs, so that the trial judge may take such action as is necessary to alleviate any prejudicial effect on the jury.

> *Butler Mfg. Co.*, 292 Ark. 198, 202, 729 S.W.2d 142, 144. *See also Steffen v. State*, 267 Ark. 402, 590 S.W.2d 302 (1979). Such reasoning is equally applicable to alleged errors made in opening statement.

Likewise, motions for a mistrial must be made at the first opportunity. *Smith*, 330 Ark. at 54, 953 S.W.2d at 872 (citing *Esmeyer v. State*, 325 Ark. 491, 930 S.W.2d 302 (1996); *Turner v. State*, 325 Ark. 237, 926 S.W.2d 843 (1996); *Johnson v. State*, 325 Ark. 197, 926 S.W.2d 837 (1996)). In *Ronning v. State*, 295 Ark. 228, 748 S.W.2d 633 (1988), the defendant argued on appeal that the prosecutor's closing argument commented on the defendant's failure to testify as evidence of guilt; however, our supreme court held that because the defendant failed to make a contemporaneous objection at trial, the argument was not preserved for our review. In *Ronning*, the court stated: "In hundreds of cases we have repeated the fundamental rule that an argument for reversal will not be considered in the absence of an appropriate objection in the trial court." 295 Ark. at 235, 748 S.W.2d at 637.

Here, the particular comments were made by the prosecutor throughout the closing statement. Appellant failed to make any objection, or to move for a mistrial, until the prosecutor had finished his argument. Accordingly, this issue was not preserved for our review, and we do not address it.

Based on the foregoing, we affirm appellant's convictions.

HART and HEFFLEY, JJ., agree.