2009 Ark. App. 664

**Daniel G. PRICE, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–942.**

Court of Appeals of Arkansas.

Oct. 7, 2009.

Daniel G. Price, appellant, pro se.

Dustin McDaniel, Att'y Gen., by: Vada Berger, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge.

A Pulaski County jury convicted appellant, Daniel G. Price, of endangering the welfare of a minor, second degree, a misdemeanor, and sentenced him to one year in jail and a $1000 fine. The jury also convicted him of battery in the second degree, a felony, and sentenced appellant to seventy-two months in the Arkansas Department of Correction and a $10,000 fine. Appellant, pro se, challenges his two convictions alleging the following points of error: (1) The trial court erred when it denied appellant his counsel of choice; (2) Appellant's Sixth, Eighth, and Fourteenth Amendment rights were denied by defense counsel refusing to let him testify; (3) The trial court erred by denying the motion for directed verdict; (4) Prosecutorial misconduct improperly inflamed the jury; (5) The cumulative effect of ineffective counsel infected and prejudiced the whole trial. We find no error and affirm.

Appellant's third point of error claims that the evidence was insufficient to convict him because the prosecution failed to prove that he acted knowingly, so as to support a charge of "reckless endangerment." Appellant apparently means to refer to his conviction for endangering the welfare of a minor in the second degree. Although the State argues that the claim is not preserved for appeal because of a lack of specificity in the directed verdict motion, *see Jefferson v. State*, 359 Ark. 454, 198 S.W.3d 527 (2004), we reach the merits and hold that sufficient evidence supports appellant's convictions of endangering the welfare of a minor and second-degree battery.

The standard of review in cases challenging the sufficiency of the evidence is well established. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Kelley v. State*, 103 Ark.App. 110, 286 S.W.3d 746 (2008). This court has repeatedly held that in reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Id.* We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* We defer to the jury's determination on the matter of witness credibility. *Id.* Jurors do not and need not view each

fact in isolation, but may consider the evidence as a whole. *Id.* The jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can from direct evidence. *Id.*

■■■ A person acts "purposely" with respect to his conduct or a result thereof "when it is his conscious object to engage in conduct of that nature or to cause such a result." Ark.Code Ann. § 5–2–202(1) (Repl.2006). Intent or state of mind is seldom capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Bell v. State,* 99 Ark.App. 300, 306, 259 S.W.3d 472, 475–76 (2007). A presumption exists that a person intends the natural and probable consequence of his acts. *Id.*

A person commits the offense of endangering the welfare of a minor in the second degree if he or she knowingly engages in conduct creating a substantial risk of serious harm to the physical or mental welfare of another person known by the person to be a minor. Ark.Code Ann. § 5–27–206(a) (Repl.2006). Serious harm to the physical or mental welfare means physical or mental injury that causes protracted disfigurement, protracted impairment of physical or mental health, or loss or protracted impairment of the function of any bodily member or organ. *Id.*

■ A person commits second degree battery if, with the purpose of causing physical injury to another person, the person causes serious physical injury to any person. Ark.Code Ann. § 5–13–202(a)(1) (Repl.2006). Under the criminal code, a person acts "purposely," for purposes of battery in the second degree, when it is the actor's conscious object to engage in conduct of that nature or to cause such a result. *See* Ark.Code Ann. § 5–2–202(1); *e.g., Cole v. State,* 33 Ark.App. 98, 102, 802 S.W.2d 472, 475 (1991). To determine if a physical injury exists, a jury may consider the severity of the attack and may rely on

its common knowledge, experiences, and observations in life to make this determination. *Linn v. State,* 84 Ark.App. 141, 133 S.W.3d 407 (2003).

■ The jury in this case was entitled to draw the reasonable inference that appellant knowingly engaged in conduct that created a risk of serious harm to the victim in this case and to find that appellant purposely caused serious physical injury to the victim. On the morning of Friday, February 2, 2007, twenty-one-month-old Braxton Robinson was left in the care of appellant, his mother's boyfriend. When appellant went to take a shower, he left Superglue out, with the cap off, that he had been using to repair a cracked computer case. When he emerged from the shower, Braxton was crying and had Superglue all over his hands and face, with one eye glued shut and the other three quarters of the way shut. Appellant attempted to remove the glue from the child's face by wiping Braxton's face and eyes with a wet towel. When that effort failed, appellant poured CLR—calcium, lime, and rust remover—on Braxton's hands and wiped the child's forehead with a towel soaked in the solution. The CLR label provides, among other things, that it causes skin and eye irritation and warns that "[i]n case of contact with skin or eyes, flush with cold water for 15 minutes, call physician if irritation continues[,] and that "(household rubber gloves)" should be worn if it is going to be used on another substance." When the CLR failed to remove the glue, appellant rubbed what he described as an "industrial strength cleaner," EZ Kleen, onto Braxton's forehead. Its label cautions to "[a]void contact with eyes. In case of eye contact, flush with water for 15 minutes and get medical attention" and that it is "TOXIC."

After appellant's attempts to remove the glue failed, he called his employer who

informed him that acetone would break down Superglue. Appellant went to Wal-Mart with the child to buy nail-polish remover with acetone, which he applied to Braxton's hands and face when they returned home. By this time, Braxton's eyes were shut and he told appellant that it hurt when appellant touched them. Appellant decided to take Braxton to the home of his ex-wife's cousin, Debbie Siebert. En route, he called his insurance plan's health coach who advised him to call the Poison Control Center. According to appellant, the Poison Control Center told him about acetone and directed him to not try to pry the child's eyes open.

Appellant and Braxton arrived at Siebert's home around 5 p.m. with Braxton's lips and eyes swollen with his eyes sealed shut. He also had red and white splotches on his face. Appellant and Siebert placed Neosporin with painkiller on his face and gave him Benadryl. Appellant did not describe to Siebert the extent of his attempts to remove the glue, instead telling her that he had put baby oil on it. Appellant left after an hour leaving Braxton in Siebert's care. Siebert understood that appellant would return with the child's mother, whom he had yet to inform of the child's injuries. Appellant did not return that evening, and when he returned the next day informed Siebert that he had still not informed the mother of the child's condition, although the mother knew that Braxton was in Siebert's care. Later that day, Siebert took Braxton to his mother who immediately took him to a nearby hospital, which transferred him to the Arkansas Children's Hospital burn unit. When Siebert informed appellant that they had taken Braxton to the hospital, appellant replied, "Thanks a lot, Debbie."

Witnesses testified about the extent of the second-degree burns on Braxton's face and the painful process of burn treatment—stating that it was the most painful type of burn to have—and Braxton's need for several pain medications. Braxton's father related his son's expression of pain, and a doctor explained that the skin of children Braxton's age was more susceptible to burns than someone older because their skin was more pliable and delicate and that the substances used by appellant could cause burns. Scabbing from the burns remained on Braxton's face for approximately three weeks after his discharge from the hospital. He suffered from skin thickening on his eyebrow and right cheek, and even after some scars disappeared, the area of burns would still appear as red spots on his face whenever he got hot.

Appellant lied about his actions to Siebert, took actions to conceal the harm to the child, and failed to take action to secure appropriate care for the child. The jury could have concluded that appellant's rubbing a substance known to cause skin irritation on the face of a toddler where Superglue had already adhered would cause, at the very least, the impairment of physical condition or a visible mark associated with the physical trauma. *See La-Fort v. State*, 98 Ark.App. 202, 205, 254 S.W.3d 27, 29–30 (2007). Accordingly, sufficient evidence supports appellant's convictions, and the trial court did not err in refusing to direct the verdicts.

Nor did the court err in refusing appellant's request for a continuance to obtain new counsel. In his first point of error, appellant claims that he was denied his counsel of choice. The information against appellant was filed on March 16, 2007. On April 25, 2007, the trial court scheduled a jury trial for September 5, 2007. On August 29, 2007, appellant moved for a continuance without objection, resulting in the resetting of the trial for January 29, 2008. On the day of trial, appellant asked the trial court to grant

him a continuance so that he could hire new trial counsel. Counsel told the court that appellant had not hired new counsel. When asked why he needed new counsel, appellant explained that he had not been provided with an expert witness to testify about the victim's medical condition, as promised by his attorney. He added that his attorney had "intended on using the witnesses by the prosecution upon cross examination[,]" but that, at the last minute, the prosecution had decided not to subpoena the doctors who had written the victim's medical records. He added that he was "kind of left high and dry" without his own expert. After noting that appellant's case was a "priority case" due to the victim's age being under fourteen, it was the day of trial, a jury was present, appellant already had been granted one continuance, and sufficient reason had not been given for a second continuance, the court denied the motion.

■ A defendant's right to counsel of choice is grounded in the Sixth Amendment to the United States Constitution, and is also guaranteed by article 2, section 10, of the Arkansas Constitution. *See Bullock v. State,* 353 Ark. 577, 111 S.W.3d 380 (2003). While constitutionally guaranteed, the right to counsel of one's choosing is not absolute, and may not be used to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice. *Id.* Once competent counsel has been obtained, the delay involved in changing counsel must be balanced against the public's interest in the prompt dispensation of justice. *Id.* If such a change would require the postponement of trial because of inadequate time for a new attorney to properly prepare a defendant's case, the circuit court may consider the reasons for the change, whether other counsel has already been identified, whether the defendant has acted diligently in seeking the change, and whether the denial is likely to result in any

prejudice to defendant. *Caswell v. State,* 63 Ark.App. 59, 973 S.W.2d 832 (1998).

■ The trial court denied appellant's request for a continuance to hire new counsel. We review the grant or denial of a motion for continuance under an abuse-of-discretion standard. *Smith v. State,* 352 Ark. 92, 98 S.W.3d 433 (2003). An appellant must not only demonstrate that the trial court abused its discretion by denying the motion for continuance, but also show prejudice that amounts to a denial of justice. *Id.* Appellant argues that the continuance should have been granted because he fired counsel on the eve of trial. He fired counsel because counsel had not obtained his own medical expert to explain the medical condition of the victim, planning to rely on the medical experts of the State whom the State did not, subsequently, subpoena. Appellant's argument with counsel arose over trial strategy.

Factors that a trial court may consider when ruling on a request for a continuance to obtain a new attorney include the reasons for the change, whether counsel has been identified, whether the defendant has been diligent in seeking the change, and whether any prejudice is likely to result to the defendant if the motion is denied. *Roseby v. State,* 329 Ark. 554, 559, 953 S.W.2d 32, 35 (1997), *overruled on other grounds by MacKintrush v. State,* 334 Ark. 390, 401, 978 S.W.2d 293, 298 (1998).

Appellant's arguments do not directly address the trial court's reasons for denying his motion, but instead focus on various complaints he had and has about his trial counsel and the alleged deprivation of the right to counsel of his choice. Any constitutional claims are not preserved for appellate review. His arguments on appeal flow through his assertion that the trial court's denial of a continuance de-

prived him of his counsel of choice and that his retained counsel's performance resulted in his conviction.

When requesting a continuance to obtain new counsel of his choice, however, appellant only asserted that his lawyer had not procured a medical expert to testify about the victim's condition. He argues on appeal that his request to "fire" his retained counsel was not an effort to delay the administration of justice. The record clearly indicates that appellant's counsel was privately retained by appellant prior to the trial. Appellant merely, after initially choosing his attorney, desired to change his choice.

■■■ Appellant did not proffer any testimony from which this court may evaluate the relevance, let alone the prejudicial effect, of its denial of the continuance to allow him the opportunity to obtain his own expert testimony. The decision to admit relevant evidence, opinion testimony or otherwise, rests in the sound discretion of the trial court, and the standard of review of such a decision is abuse of discretion. *E.g., Marts v. State*, 332 Ark. 628, 968 S.W.2d 41 (1998). Such opinion testimony is admissible provided it does not mandate a legal conclusion. *Marts, supra*. While a doctor's opinion about the extent of the injuries may have embraced the ultimate issue as to whether appellant caused physical injury under the requisite circumstances, the doctor's factual basis for his opinion could be explored in cross-examination and go to credibility. A jury is not bound to accept opinion testimony of experts as conclusive and is not compelled to believe an expert's testimony any more than the testimony of any other witness. *Bowen v. State*, 322 Ark. 483, 911 S.W.2d 555 (1995), *cert. denied*, 517 U.S. 1226, 116 S.Ct. 1861, 134 L.Ed.2d 960 (1996). The jury would have been specifically instructed that it was not bound to accept an expert opinion as conclusive, but should

give the opinion whatever weight it thought the opinion should have, and that it could disregard any opinion testimony if it found it to be unreasonable.

Appellant has not demonstrated that the expert testimony he wanted would have resulted in a different conclusion by the jury. Therefore, the trial court did not err in denying appellant's request for a continuance for new counsel. Appellant's second, fourth, and fifth assertions of error are not preserved for appellate review. Accordingly, we find no error and affirm.

ROBBINS and MARSHALL, JJ., agree.