Cite as 2024 Ark. App. 201

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CR-23-347

| | |
|---|---|
| JOE CANTRELL | **Opinion Delivered** March 13, 2024 |
| APPELLANT | APPEAL FROM THE CLEBURNE COUNTY CIRCUIT COURT |
| V. | [NO. 12CR-22-14] |
| STATE OF ARKANSAS | HONORABLE TIM WEAVER, JUDGE |
| APPELLEE | AFFIRMED |

## WAYMOND M. BROWN, Judge

A Cleburne County Circuit Court jury found appellant Joe Cantrell guilty of three counts of delivery of a controlled substance—methamphetamine—and one count of maintaining a drug premises. He was sentenced as a habitual offender to concurrent terms of one hundred years' incarceration in the Arkansas Department of Correction on count one, forty years' incarceration and a $15,000 fine on both counts two and three, and thirty years' incarceration and a $10,000 fine on count four—maintaining a drug premises.[1] On appeal, Cantrell argues that the circuit court erred by denying his directed-verdict motion. We affirm.

---

[1]Count one was for delivery of at least ten grams but less than two hundred grams of methamphetamine. Counts two and three were for delivery of lesser amounts of at least two grams but less than ten grams of methamphetamine.

A two-day trial was held on February 8–9, 2023. The State alleged that on three separate occasions, Cantrell sold methamphetamine to a confidential informant at a home located at 526 Brook Drive.

Sheriff Brandon Long testified that, while serving in his former role as a Cleburne County Sheriff's Office detective, he was assigned to the narcotics division. In that capacity, Long conducted three controlled buys of methamphetamine with the cooperation of a criminal informant, Daniel Pettis. Pettis was issued a video recording device disguised as a key fob to record the transactions. Long testified that the first controlled buy occurred on May 6, 2021. He stated that after a search of informant Pettis and his vehicle had been completed, Pettis was issued the recording device and money to use for the drug purchase. Pettis then drove to 526 Brook Drive. Long testified that he followed Pettis, as with all controlled buys, to monitor the transaction and for safety reasons. Pettis was inside the residence for seventeen minutes. Once Pettis left, he met Long at the predetermined location, Pettis handed over to Long the purchased substance, and it was field tested and indicated positive for methamphetamine. The methamphetamine was subsequently weighed, packaged, and sent to the state crime lab for analysis.

Long testified that the second controlled buy occurred on May 12. Pettis was again searched, provided the recording device and drug-buy money, and then followed to 526 Brook Drive where he made another methamphetamine purchase. After the buy, Long collected the methamphetamine and the video device, searched Pettis and his vehicle for any contraband or controlled substances, and returned to the sheriff's office. The same procedure was followed the next day, on May 13 when the third controlled buy took place.

Pettis testified that he "was in a bad world for a while"; consequently, he accumulated between ten and twenty prior felony convictions. He stated that following an arrest for possession of methamphetamine, he agreed to work with the sheriff's office. Pettis testified that he participated in three controlled buys from Cantrell with Detective Long. Pettis stated that he utilized an audio- and video-recording device during each of the buys. Portions of each were played, and Pettis confirmed that he recorded the footage and identified Cantrell in the videos.

Pettis testified that the first controlled buy transpired while they "were walking out through the woods" because Cantrell "didn't want to do the deal at the house." Pettis stated that he used buy money received from Detective Long to purchase methamphetamine from Cantrell. He stated that buys number two and three took place in Cantrell's house located at 526 Brook Drive. Pettis clarified, "I don't think it was his house[,]" but "he lived there." He stated that he had known Cantrell for four or five months prior to conducting the controlled buys, and there was no chance that he misidentified Cantrell as the person who had sold him the methamphetamine.

Pettis testified that, using buy money from the Cleburne County Sheriff's Office, he purchased a half ounce of methamphetamine from Cantrell during the second buy. The purchase was promptly turned over to Detective Long. As for the third buy, Pettis confirmed that in exchange for the buy money issued by the sheriff's office, Cantrell gave him methamphetamine. A portion of video from the buy was played; Pettis identified Cantrell's voice and his own. On cross, Pettis testified that he was not using methamphetamine and was not high when he was doing the controlled buys. Pettis stated that he had been to 526 Brook Drive four or five times, three times for the buys and once or twice "probably getting high," and each time, Cantrell was there.

On appeal, Cantrell asserts error in the circuit court's denial of his directed-verdict motion because there was insufficient evidence to support the convictions. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence.[2] When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict.[3] We will affirm a judgment of conviction if substantial evidence exists to support it.[4] Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture.[5] We defer to the jury's determination on the matter of witness credibility.[6] Jurors do not and need not view each fact in isolation; rather, they may consider the evidence as a whole.[7] The jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can be from direct evidence.[8] The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the

---

[2]*Kelley v. State*, 103 Ark. App. 110, 286 S.W.3d 746 (2008).

[3]*Id.*

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7]*Id.*

[8]*Id.*

4

facts rather than the defendant's.[9] The uncorroborated testimony of a State's witness is sufficient to sustain a conviction.[10]

Cantrell's first argument on appeal is that there was insufficient evidence to support his convictions for delivery of methamphetamine. It is unlawful for a person to deliver methamphetamine.[11] Delivery is defined as the actual, constructive, or attempted transfer from one person to another of a controlled substance in exchange for money.[12] Cantrell contends that none of the videos taken during the buys shows an exchange of money or drugs between Cantrell and Pettis. He argues that the only evidence against Cantrell "was the self-serving testimony of Pettis, an admitted drug user at the time of the alleged buys who, in exchange for his participation with police, received cash and a dismissal of multiple charges." Additionally, he argues that the search of Pettis and his vehicle prior to each of the buys was not long enough, taking "a mere three minutes," as opposed to fifteen to twenty minutes.

Pettis identified Cantrell as the person who sold him methamphetamine during each of the three controlled buys. Each of the drug purchases was confirmed to be methamphetamine by testing performed by the Arkansas State Crime Laboratory. Cantrell's contention that the evidence is lacking because the exchange of money and/or drugs was not captured on the recording is unpersuasive. An informant's testimony does not require corroboration in the absence of evidence indicating that the

---

[9]*Dunn v. State*, 371 Ark. 140, 264 S.W.3d 504 (2007).

[10]*Watkins v. State*, 2009 Ark. App. 124, 302 S.W.3d 635.

[11]Ark. Code. Ann. § 5-64-422(a) (Repl. 2016).

[12]Ark. Code Ann. § 5-64-101(6) (Supp. 2023).

5

informant was an accomplice. Here, Cantrell makes no assertion that Pettis was an accomplice. Further, consideration of Pettis's criminal history and motives for cooperating with law enforcement does not provide reversible error. This court does not weigh the evidence presented at trial or assess the credibility of the witnesses because those are matters for the fact-finder.[13] We will not disregard a witness's testimony, including the uncorroborated testimony of a confidential informant, after the jury has given it full credence.[14] Moreover, Cantrell provides no authority establishing that the search of an informant's vehicle must endure for a specific period of time to demonstrate thoroughness. We will not consider an argument that presents no citation to authority or convincing argument.[15]

Cantrell also argues that the evidence was insufficient to support his maintaining-a-drug-premises conviction. It is unlawful for any person "knowingly to keep or maintain any store, shop, warehouse, dwelling, building, or other structure or place or premise that is resorted to by a person for the purpose of using or obtaining a controlled substance in violation of this chapter or that is used for keeping a controlled substance in violation of this chapter."[16] Cantrell contends that there was no evidence that he kept, maintained, or owned the residence located at 526 Brook Drive; in fact, the evidence demonstrates that the house was owned by someone else, Thomas Wonzy. Ownership of the dwelling is not an element of the crime.[17] Pettis testified that Cantrell lived in the residence

---

[13]*Reynolds v. State*, 2017 Ark. App. 212, 518 S.W.3d 134.

[14]*Cave v. State*, 2017 Ark. App. 212, 518 S.W.3d 134.

[15]*Ortega v. State*, 2016 Ark. 372, 501 S.W.3d 824.

[16]Ark. Code Ann. § 5-64-402(a)(2) (Repl. 2016).

[17]*Curtis v. State*, 2015 Ark. App. 167, 457 S.W.3d 700.

where the drug buys occurred.  He had been to the house four or five times, to either use drugs or purchase drugs, and Cantrell was there each time.  Pettis's testimony was sufficient to establish that Cantrell lived at the residence and knew drugs were being distributed from the premises. Accordingly, substantial evidence supports Cantrell's conviction for maintaining a drug premises.

Affirmed.

KLAPPENBACH and HIXSON, JJ., agree.

*Robert M. "Robby" Golden*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.