Cite as 2026 Ark. App. 46

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CR-25-22

| | |
|---|---|
| FREDRICK JABBAR STALLINGS | **Opinion Delivered** January 21, 2026 |
| APPELLANT | APPEAL FROM THE BRADLEY COUNTY CIRCUIT COURT [NO. 06CR-23-31] |
| V. | |
| STATE OF ARKANSAS | HONORABLE QUINCEY ROSS, JUDGE |
| APPELLEE | AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Fredrick Jabbar Stallings was found guilty at a jury trial of multiple felony charges related to possession of drugs, firearms, and paraphernalia for which he was sentenced as a habitual offender to an aggregate term of forty years' incarceration in the Arkansas Division of Correction. On appeal, Stallings argues the circuit court erred when it denied his directed-verdict motion on all charges because the evidence was insufficient to support findings that he (1) constructively possessed the contraband; and (2) was liable as an accomplice. We affirm.

On May 9, 2023, a search warrant was executed at the known residence of April Gill.[1] During execution of the search warrant, Gill and Stallings were found lying together on an air mattress in a bedroom. In that same bedroom, officers located two handguns, approximately fifty

---

[1]According to a confidential informant, Gill, a probationer, was selling illegal drugs from her residence.

grams of methamphetamine, and digital scales. In the kitchen and living room area of the house, officers found another set of digital scales, approximately five grams of marijuana, and a bag of pills identified as Xanax. Gill admitted selling methamphetamine and told officers that Stallings "usually gets methamphetamine for her."

On May 22, Stallings was charged by criminal information with having committed—or having been an accomplice in the commission of—the following offenses: possession of methamphetamine with the purpose to deliver, possession of drug paraphernalia, simultaneous possession of drugs and firearms, and possession of firearms by certain persons.

Stallings's jury trial was held on May 9, 2024. Officer James Slaughter with the Tenth Judicial Drug Task Force testified that, on May 9, 2023, having obtained information from several informants, a search warrant was executed on Gill's residence. In a bedroom, Gill and Stallings were found lying on an air mattress together. The mattress was placed in the corner of the bedroom; Gill was lying on the side by the wall and Stallings was on the outside. Because Officer Slaughter saw a bullet lying on the floor right beside the mattress, he asked Stallings where the gun was located. Stallings did not verbally respond; however, he repeatedly looked down at a lunchbox[2] that was beside the mattress and then looked back up at Officer Slaughter. The lunchbox was "inches" from Stallings and was "right there by his cell phone." Gill and Stallings were placed in handcuffs. When Gill was questioned about the gun's location, she stated that it was inside the lunchbox. Inside the lunchbox, Officer Slaughter recovered a loaded Glock handgun and three small bags of a crystal substance that he believed to be methamphetamine.

---

[2]The lunchbox is also referred to as an ice chest in the trial transcript. It was described as a black soft-sided zip-up small cooler, like a personal lunchbox.

In plain view, on top of a small stereo-style cabinet, officers found another bag with a small amount of suspected methamphetamine. Digital scales with a crystal residue and baggies were found on top of a dresser that was situated three or four feet from the foot of the mattress. Beside the digital scales was a silver box. Officer Slaughter testified that the silver box contained a Taurus 9mm handgun and a loaded magazine. In a drawer of that same dresser, officers found a sock containing a bag with a large quantity of suspected methamphetamine. Officer Slaughter stated that the bag weighed approximately thirty-nine grams and contained one rock of methamphetamine that alone weighed over thirty-five grams, an amount indicating the person who possessed it was a dealer, not a user. Additional contraband was found in other areas of the residence; however, those items do not support Stallings's charges.

On cross-examination, Officer Slaughter acknowledged that Stallings's name was not mentioned in the search warrant; it listed only the name of Gill, who was on probation for selling methamphetamine. Gill admitted to Officer Slaughter that she sold methamphetamine to support her drug habit and that Stallings usually gets the methamphetamine for her.

Officer Tad Huntsman, a narcotics detective with the Ashley County Sheriff's Office and a member of the drug task force, was next to testify. He stated that while assisting in the execution of a search warrant for Gill's residence, he came into contact with Gill and Stallings in a bedroom. They were lying in the bed; there were a couple of bullets on the floor indicating the presence of a gun, so Officer Huntsman asked Officer Slaughter to come into the room to assist him. When Officer Slaughter asked if there was a gun, Stallings looked at the ice chest on the floor. Ultimately, Gill told officers there was a gun inside the ice chest. Inside the ice chest was a Glock pistol and three bags of suspected methamphetamine. Officer Huntsman stated that the ice chest "was within arm's reach"

3

of Stallings. He also testified that a "very large sack of methamphetamine" was found stuffed in a sock in a dresser drawer. An average user buys "a gram or two" at a time; however, the large chunk of suspected methamphetamine weighed thirty-five and a half grams, suggesting an amount held for distribution. Digital scales were also found in plain view on top of the dresser. Inside a box on top of the dresser was another pistol. Officer Huntsman stated that "maybe a step away" from the ice chest was a large speaker. On top of the speaker was a bag containing a gram of suspected methamphetamine.

On cross-examination, Officer Huntsman verified that the firearms, the three small bags of methamphetamine, and the large rock of methamphetamine were not discovered in plain view. He further acknowledged that no contraband was found on Stallings's person.

Lindsey Reith, a forensic chemist with the Arkansas State Crime Laboratory, testified that she tested the evidence submitted in this case. She stated that it is the policy of the crime laboratory to test only the evidence supporting the highest potential charge in each case. In accordance with that policy, she tested the evidence labeled as EV1, which pertained to the contents of the bag found inside the sock. She determined that EV1's white crystalline substance weighed approximately forty-one grams and contained methamphetamine.

Stallings moved for a directed verdict after the State rested, contending the State failed to prove that he possessed a firearm, methamphetamine, or drug paraphernalia. The circuit court denied the motions.

Stallings testified on his own behalf. He did not live with Gill; he had been to her residence about twenty times because they were involved in a sexual relationship. Stallings stated that, on the night the search warrant was executed, he arrived at Gill's home at approximately 1:00 a.m., went

4

directly to the bedroom, and had been there "maybe six, seven hours." He denied ownership or that he was aware of the drugs, guns, and paraphernalia found in the house. On cross-examination, Stallings admitted that he had bought methamphetamine for Gill "in the past" and denied knowledge that drugs were being sold out of the residence. On recross, Stallings stated that it was not a shock to learn there was methamphetamine in Gill's house.

The defense then rested. Stallings renewed his directed-verdict motions, arguing that "[i]t would be the same arguments just with the addition to [Stallings's] testimony that he had no knowledge of anything that was in that home, and his mere presence does not constitute him being found guilty of all these charges." The circuit court denied the renewed directed-verdict motion.

Following the jury trial, Stallings was convicted of all the charges and was sentenced as a habitual offender to a total term of forty years' incarceration. A sentencing order was entered on May 10, 2024. Stallings appealed.[3]

On appeal, Stallings argues that there was insufficient evidence to support the convictions. Specifically, he asserts that the State failed to prove that he constructively possessed the contraband found in Gill's residence. He additionally challenges the sufficiency of the evidence supporting a finding of accomplice liability.

When reviewing a challenge to the sufficiency of the evidence arising from a motion for directed verdict, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict.[4] We will affirm a judgment of conviction if substantial evidence

---

[3]On February 5, 2025, this court granted Stallings's motion for belated appeal.

[4]*Kelley v. State*, 103 Ark. App. 110, 286 S.W.3d 746 (2008).

5

exists to support it.[5]  Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture.[6]

Stallings was charged with possession of methamphetamine with the purpose to deliver, possession of drug paraphernalia, simultaneous possession of drugs and firearms, and possession of firearms by certain persons.  Each offense requires a showing that he possessed the contraband.

To convict a person of possession, the State is not required to prove actual possession; constructive possession, which is the control or right to control the contraband, is sufficient.[7]  Actual possession occurs when a defendant has actual physical possession of contraband.[8]  Constructive possession requires that the State prove that the defendant exercised care, control, and management over the contraband.[9]  Constructive possession may be established by circumstantial evidence and can be inferred when the contraband is found in a place immediately and exclusively accessible to the defendant and subject to his control, and constructive possession can also be inferred when the contraband is in the joint control of the accused and another.[10]  However, joint occupancy of a residence, standing alone, is not sufficient to establish possession or joint possession.[11]  Some

---

[5]*Id.*

[6]*Id.*

[7]*Morgan v. State*, 2021 Ark. App. 220.

[8]*Id.*
[9]*Hyatt v. State*, 2023 Ark. App. 544, 680 S.W.3d 84.

[10]*Mudd v. State*, 2018 Ark. App. 628, 565 S.W.3d 154.

[11]*Railey v. State*, 2023 Ark. App. 433, 675 S.W.3d 912.

additional factor must link it to the accused, like proximity, the fact that the contraband was in plain view, the defendant's ownership of the residence, or suspicious behavior before contraband was discovered.[12] This list is not exhaustive.[13] These additional factors are simply some recognized circumstances that bolster the inference that a defendant knew about accessible contraband.[14] Circumstantial evidence may be sufficient evidence to support a conviction if it excludes every reasonable hypothesis other than that of the guilt of the accused.[15] Whether the evidence excludes all reasonable hypotheses other than guilt is a matter for the jury to determine.[16]

We view the following evidence in the light most favorable to the State: Stallings was in close proximity to the contraband discovered in the bedroom of Gill's house. He had been to Gill's residence approximately twenty times. He was lying in a bed inches away from a lunchbox that contained a loaded firearm and methamphetamine. Stallings glanced at the lunchbox when asked where the firearm was located. His cell phone was right beside the lunchbox that contained a loaded firearm and methamphetamine. A "step away" from the lunchbox, a small bag of methamphetamine was in plain view on top of a stereo cabinet. A few feet away from the bed Stallings was lying in, a digital scale was found in plain view on top of a dresser. Beside the digital scale was a box that contained another loaded firearm. In a drawer of that same dresser, officers found a sock that

---

[12]*Williams v. State*, 2024 Ark. App. 570, 702 S.W.3d 431.

[13]*See id.*

[14]*Id.*

[15]*Railey*, *supra*.

[16]*Id.*

contained approximately forty grams of methamphetamine. Gill told officers, and Stallings admitted in his trial testimony, that he had purchased methamphetamine for Gill in the past. And Stallings admitted to a history of methamphetamine use. Jurors do not and need not view each fact in isolation but rather must consider the evidence as a whole.[17] Jurors are also entitled to draw any reasonable inference from circumstantial evidence to the same extent that they can from direct evidence.[18] Here, the jury was presented sufficient evidence from which it could link Stallings to the contraband—methamphetamine, paraphernalia, and firearms—found in close proximity to him, some in plain view, in the bedroom of Gill's residence.

Because we hold that substantial evidence supports the jury's finding that Stallings constructively possessed the contraband at issue, it is unnecessary to address his second argument on appeal challenging his accomplice liability.

Affirmed.

WOOD and HIXSON, JJ., agree.

*D. Franklin Arey III*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Michael Zangari*, Ass't Att'y Gen., for appellee.

---

[17]*Id.*

[18]*Id.*