Cite as 2026 Ark. App. 96

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CR-25-193

| | |
|---|---|
| JAMES THOMPSON | **Opinion Delivered** February 11, 2026 |
| APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIRST DIVISION [NO. 60CR-22-756] |
| V. | |
| STATE OF ARKANSAS | HONORABLE LEON JOHNSON, JUDGE |
| APPELLEE | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant James Thompson was found guilty at a jury trial of one count each of rape and second-degree sexual assault for which he was sentenced to an aggregate term of thirty years' incarceration. On appeal, Thompson argues (1) there was insufficient evidence to support his sexual-assault conviction; (2) the circuit court abused its discretion by permitting the State to violate its pretrial order excluding Rule 404(b) evidence during its cross-examination of a witness; and (3) the circuit court abused its discretion with regard to his closing argument. We affirm.

On January 2, 2020, it was reported through the Arkansas Child Abuse Hotline that then sixteen-year-old Minor Child ("MC") disclosed that Thompson had been sexually abusing her since 2016 when she was twelve years old. Thompson is the husband of MC's older sister, Melody. On March 7, 2022, following an investigation, Thompson was charged by felony information with rape and second-degree sexual assault.

Before trial, on August 20, 2024, the State filed a notice of intent to use evidence pursuant to Arkansas Rule of Evidence 404(b). Specifically, the State sought to introduce evidence that Thompson physically abused Melody to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

A jury trial was held on August 27–28, 2024. At the outset of the trial, the circuit court considered the State's Rule 404(b) motion. The State expressed that it intended to introduce evidence that MC witnessed Thompson physically batter his wife. The State contended that MC was afraid of Thompson and that the physical abuse suppressed the disclosure of the sexual abuse. Thompson argued that the evidence was inadmissible because it was highly prejudicial and had no probative value. The State alternatively requested that the evidence be allowed "as proper impeachment evidence if the time arises." The circuit court agreed with Thompson and ruled that the evidence was inadmissible; however, the court warned that the evidence could come in if Thompson "open[ed] the door."

Mary Pifer, an investigator with the Arkansas State Police Crimes Against Children Division, testified that she was assigned the case following a report made to the child-abuse hotline.

Sheila McBride[1] testified that she is MC and Melody's mother. She stated that MC was two or three years old when Melody began dating Thompson. She stated that once Melody and Thompson moved in together, MC spent "a lot" of time at their house. McBride testified that she and MC no longer have a relationship with Melody and her children.

---

[1]She is also referred to as Sheila Robinson and Sheila Gibbon.

On cross-examination, McBride testified that Melody was fifteen years old when she began dating Thompson. When McBride found out that Thompson was eighteen years old, she reported it to the police because Melody was underage. However, the couple's first child was born when Melody was in twelfth grade. McBride explained that MC began visiting Melody and Thompson when she was three or four. When MC was between the ages of twelve and sixteen, she visited often: on the weekends, on weekdays after school, even spending the night. McBride trusted Thompson to watch MC while Melody worked, and MC served as their babysitter. MC stopped going to Melody and Thompson's home when MC disclosed she had been sexually abused by Thompson. On redirect, McBride testified that she has had no contact with Melody since the allegations were reported.

When the trial took place, MC was twenty years old. She testified that Thompson is her "sister's kids' father." MC spent a lot of time at their house, babysitting, cleaning, and playing with their children. When Melody was working, Thompson was in charge; he was the only adult in the house most of the time. MC testified that she was twelve years old the first time Thompson made her feel uncomfortable. They were play wrestling, and she "felt his penis touch [her] butt." When she was thirteen, they were again wrestling, and Thompson managed to take her clothes off and "stick his penis inside of [her]." He pinned her hands above her head and attempted to kiss her. She pushed him off of her and into the wall, leaving a hole in the wall. On another occasion, Thompson sucked on her breasts and grabbed her butt. The last incident of sexual assault occurred when MC was fifteen. MC, Melody, and Thompson smoked marijuana together, then Melody left to shower. Thompson again removed MC's clothing, held her hands down, and digitally penetrated her vagina. He stopped when he heard Melody in the hallway.

MC testified that when Thompson paid her for babysitting, he would offer more money if she would let him touch her. Sometimes Thompson tucked the money in her bra. The sexual abuse was reported after MC discussed the abuse with a friend, and an adult overheard and told MC's mother.

The State rested, and Thompson moved for a directed verdict, which the circuit court denied.

Melody testified in Thompson's defense. She stated that in 2016, MC visited her home "probably three times a month" to spend time with her nieces and nephews, but she did not babysit Melody's children. She denied that MC was ever at her home alone with Thompson. MC only visited on Melody's "off days" when she did not go to work. Melody testified that MC did not come to her house in 2017 or 2018; she stated that she was not in contact with MC because she and her mother were not getting along. Melody and Thompson lived with Thompson's mother from March 2018 to March 2019; she had no contact with MC during that time. In March 2019, Melody and Thompson moved into their own residence again. Melody stated that MC spent one night at her house at the end of 2019.

On cross-examination, Melody stated she and Thompson began dating in 2007, married in 2022, and have seven children together. Thompson's primary job was to take care of their children while she worked. Melody stated that MC did not babysit for her, but she did help with the children. She acknowledged that she and Thompson had authority over everyone in the house. Melody stated that since the allegations were made, she no longer has a relationship with MC.

Melody testified that she does not have a good relationship with her mother, and she believes that MC made the sexual-abuse allegations against Thompson because her mother put her up to it. After Melody reaffirmed her statement that MC had never visited her house in 2018, the State questioned her regarding a 2018 incident when police were called because Thompson struck her in

4

the face multiple times in front of MC. Melody initially denied the event; however, without objection from Thompson, the State had Melody review a police report of the incident. Melody testified that her mother made the report, and MC was not present.

Melody denied that she or Thompson had threatened MC to drop the charges. She further denied that Thompson had ever threatened MC. After the State showed Melody a 2012 police report about an incident when Thompson threatened to hit MC in the face, Melody maintained that she did not recall the incident.

The State asked Melody about an October 2016 incident when the police were called because Thompson hit her mother in the face. Melody testified that she and Thompson had a verbal argument but denied that Thompson hit or threatened her mother. After attempting to refresh Melody's recollection with the police report, Melody maintained that Thompson did not strike her mother, her mother's cheek was not bruised by Thompson, and she did not tell officers that Thompson had anger issues.

After the defense rested, Thompson renewed his directed-verdict motion, which the circuit court again denied.

Following the jury trial, Thompson was convicted of one count of rape and one count of second-degree sexual assault. He was sentenced to an aggregate term of thirty years' incarceration. The sentencing order was filed on September 10, 2024.[2] Thompson timely filed a pro se notice of appeal. An amended notice of appeal was filed by his counsel on November 16, 2024.

---

[2]An amended sentencing order was filed on February 6, 2025.

On appeal, Thompson first argues that there was insufficient evidence to support his second-degree sexual-assault conviction.

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict.[3] We will affirm a judgment of conviction if substantial evidence exists to support it.[4] Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture.[5] We defer to the jury's determination on the matter of witness credibility.[6] Jurors do not and need not view each fact in isolation; rather, they may consider the evidence as a whole.[7] The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's.[8] We need only consider testimony that supports the guilty verdict.[9]

In order to preserve a challenge to the sufficiency of the evidence in a jury trial, a criminal defendant must make a motion for directed verdict at the close of the evidence offered by the

---

[3]*Kelley v. State*, 103 Ark. App. 110, 286 S.W.3d 746 (2008).

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7]*Id.*

[8]*Dunn v. State*, 371 Ark. 140, 264 S.W.3d 504 (2007).

[9]*Holcomb v. State*, 2014 Ark. 141, 432 S.W.3d 600.

prosecution and at the close of all the evidence.[10] A motion for directed verdict shall state the specific

grounds therefor.[11] Without a circuit court's ruling on a specific motion, there is nothing for this

court to review.[12] Failure to abide by these procedural rules renders any question of the sufficiency

of the evidence waived on appeal.[13] An appellant must make a specific motion for a directed verdict

that informs the circuit court of the exact element of the crime that the State has failed to prove.[14]

Rule 33.1 is strictly construed.[15]

A person commits sexual assault in the second degree if the person engages in sexual contact

with a minor while the person is in a position of trust or authority over the minor.[16] On appeal,

Thompson contends that the State failed to prove that he was in a position of authority over MC.[17]

However, Thompson's directed-verdict argument at the trial level was that the State had not met its

burden of proof in proving him guilty of the charges beyond a reasonable doubt. Plainly, he did not

challenge the proof that he was in a position of authority over MC. A motion merely stating that the

evidence is insufficient does not preserve for appeal issues relating to a specific deficiency, such as

---

[10]Ark. R. Crim. P. 33.1(a).

[11]*Daniels v. State*, 2018 Ark. App. 334, 551 S.W.3d 428.

[12]*Id.*

[13]*Id.*; Ark. R. Crim. P. 33.1(c).

[14]*Conley v. State*, 2011 Ark. App. 597, 385 S.W.3d 875.

[15]*Pratt v. State*, 359 Ark. 16, 194 S.W.3d 183 (2004).

[16]Ark. Code Ann. § 5-14-125(a)(4)(A)(iv) (Repl. 2024).

[17]Thompson does not challenge the sufficiency of the evidence supporting his rape conviction.

insufficient proof on the elements of the offense.[18]  Thus, Thompson's sufficiency challenge is not preserved for appellate review.

For his second point on appeal, Thompson argues that the State violated the circuit court's ruling regarding Rule 404(b) evidence concerning his physical abuse of Melody.  In a pretrial motion, the State sought to introduce evidence that MC witnessed Thompson commit acts of domestic violence against Melody to establish that MC was afraid of Thompson, and that fear is what kept her from disclosing the sexual abuse.  The circuit court ruled that the evidence was inadmissible but cautioned that the evidence could come in if Thompson opened the door.

On cross-examination, Melody testified that MC did not visit her house in 2018.  The State, without objection, presented Melody with a 2018 police report and asked her if it demonstrated that MC was at her house when authorities were called because Thompson hit her.  Melody denied the allegations in the report and MC's presence at her house.  After Melody denied that Thompson threatened MC, the State presented her with a police report and asked if, in August 2012, she contacted police because Thompson threatened to hit MC in the face. Melody testified that she did not remember the incident.  Likewise, Melody denied that Thompson threatened her mother.  In response, the State showed her an October 2016 report and asked whether it demonstrated that Thompson threatened her mother and hit her mother in the face, leaving a bruise on her cheek. Melody stated that the incident never happened.

Thompson did not object to the line of questioning concerning threats or physical abuse or to the State's use of police reports to impeach Melody's testimony.  The law is well settled that to

_____

[18]Ark. R. Crim. P. 33.1(c).

preserve an issue for appeal, a defendant must object at the first opportunity; otherwise, he has waived his argument regarding that issue on appeal.[19] Because Thompson failed to raise an objection at the trial level, we conclude that his argument is not preserved for appellate review.

For his final point, Thompson argues that the circuit court improperly limited his closing argument. During closing, Thompson reminded the jury that although the State questioned Melody regarding reports of physical altercations between her and Thompson, no police reports were introduced into evidence. The State objected, arguing that it was "inappropriate to comment on the reports." Thompson responded that Melody was shown reports and questioned regarding alleged physical violence by Thompson. The State noted that the reports were used on cross-examination to impeach Melody's testimony but were not introduced into evidence because they were inadmissible hearsay. The circuit court ruled that Thomspon could "get into [ ] the action" but not why the reports were not introduced.

Thompson asserts that the circuit court's ruling violated his "constitutional due process right to present a defense." He contends that his closing argument was within the scope of trial evidence; it was directly related to evidence on which the State relied during its case-in-chief. Thompson submits that he should have been permitted to point out the State's failure to produce the reports, and in sustaining the State's objection, the circuit court infringed upon his constitutional rights. Thompson's argument is not preserved for appellate review because he did not make a due-process argument before the circuit court. In criminal cases, issues raised, including constitutional ones,

---

[19]*Scarbrough v. State*, 2024 Ark. 71, 687 S.W.3d 557.

must be presented to the circuit court to preserve them for appeal.[20]  A party cannot change the grounds for an objection or motion on appeal but is bound by the scope of the arguments made at trial.[21]  When there is no evidence that a defendant raised his or her due-process argument to the circuit court, it may not be raised for the first time on appeal.[22]

Additionally, a circuit court is given broad discretion to control counsel in closing arguments, and we will not reverse such a ruling absent an abuse of discretion.[23]  Closing arguments must be confined to the evidence introduced during trial, and it is the circuit court's duty to prohibit counsel from making improper arguments.[24]  Because Thompson's statement referred to police reports not in evidence, the circuit court did not abuse its broad discretion in prohibiting the argument.  Further, counsel was permitted to present a defense to the reports of physical abuse; he pointed out that Thompson had not been charged with physically abusing Melody or threatening MC.  He also argued to the jury that neither Melody nor her mother nor MC testified that Thompson physically assaulted or threatened them.  The circuit court allowed Thompson to present a defense to the allegations in the reports.

Affirmed.

WOOD and HIXSON, JJ., agree.

---

[20]*Railey v. State*, 2023 Ark. App. 433, 675 S.W.3d 912.

[21]*Id.*

[22]*Pinegar v. State*, 2022 Ark. App. 482.

[23]*House v. State*, 2020 Ark. App. 452, 611 S.W.3d 197.

[24]*Id.*

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.